# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# ALEXANDRIA DIVISION

**D&J INVESTMENTS OF CENLA, LLC, ET AL**

**CIVIL DOCKET NO. 1:20-CV-01174**

**VERSUS**

**JUDGE DAVID C. JOSEPH**

**BAKER HUGHES A GE COMPANY, LLC, ET AL**

**MAGISTRATE JUDGE JOSEPH H.L. PEREZ-MONTES**

## MEMORANDUM ORDER AND INJUCTION

Before the Court is a CONSOLIDATED MOTION FOR INJUNCTION AGAINST STATE COURT PROCEEDINGS AND MOTION TO ENTER PARTIAL FINAL JUDGMENT UNDER RULE 54(B) (collectively, the "Motions") filed by Defendant, Halliburton Energy Services, Inc. ("Halliburton"). [Doc. 106]. Defendants Stantec Consulting Services, Inc. ("Stantec"), GHD Services, Inc. ("GHD"), and Dresser, LLC; Dresser RE, LLC; Baker Hughes, a GE Company, LLC (now known as Baker Hughes Holdings LLC); Baker Hughes Energy Services, LLC; and GE Oil & Gas, LLC (now known as Baker Hughes Energy Services, LLC) (collectively, "Dresser") have joined in Halliburton's Motions. [Docs. 111, 113, 115]. The Court heard oral argument on the Motions on July 1, 2021. For the following reasons, the Motions are GRANTED.

## FACTUAL AND PROCEDURAL HISTORY

This litigation arises from alleged property damage and personal injury sustained by landowners near a now-closed industrial valve manufacturing facility in Pineville, Louisiana (the "Dresser Facility") stemming from contamination caused by its operations. [Docs. 1-1, 105]. In sum, Plaintiffs contend that for the

approximately 50 years during which the Dresser Facility was operational, the company improperly disposed of solvents, cutting oils, acids, and caustics – thereby causing groundwater and soil contamination to Plaintiffs' respective properties. [*Id.*].

A general chronology of the events prefacing Plaintiffs' discovery of their potential claims is as follows. In late 2011, Dresser discovered elevated levels of hydrocarbons ("TPH") in the groundwater adjacent to the Dresser Facility and notified the Louisiana Department of Environmental Quality ("DEQ") in early 2012. [Docs. 1-1, 33-1]. In response to this notification, the DEQ instructed Dresser to submit an investigation work plan in compliance with the DEQ's Risk Evaluation/Corrective Action Program ("RECAP"). [Docs. 1-1, 33-2]. The DEQ subsequently accepted Dresser's proposed work plan and directed Dresser to initiate an investigation into the scope and nature of the potential contamination in accordance with the RECAP plan's specifications. [Docs. 1-1, 33-5].

Based on Dresser's preliminary findings, the geographical scope of the investigation was later broadened to a larger area that may have been impacted by contamination. [*Id.*]. In light of this expanded scope, Dresser submitted a revised investigation work plan and continued to comply with the DEQ's instructions and proposals over the next several years. [Docs. 1-1, 33-6]. On January 8, 2020, the DEQ notified property owners and residents in affected areas of the groundwater and soil contamination emanating from the Dresser Facility. [Docs. 1-1, 33-9]. Generally, the DEQ's notice explained that Dresser, as owner of the facility, bears the responsibility of investigating the contamination, described the results of Dresser's preliminary investigations, and outlined Dresser's proposed remediation process. [*Id.*].

I.   **The Lawsuit**

On July 30, 2020, Plaintiffs filed the instant matter (the "Lawsuit") in the 35th Judicial District Court, Grant Parish, Louisiana ("35th JDC") against nine defendants: (i) Baker Hughes, a GE Company; (ii) Baker Hughes Energy Services LLC; (iii) Dresser, Inc.; (iv) Dresser RE, LLC; (v) GE Oil & Gas, LLC; (vi) Halliburton; (vii) GHD; (viii) Stantec; and (ix) the DEQ.[1] [Doc. 1-1]. The action was removed to this Court on September 10, 2020, based on diversity subject matter jurisdiction under 28 U.S.C. § 1332. [Doc. 1].

Plaintiffs subsequently filed a Motion for Remand, arguing that the presence of the DEQ in the litigation precludes federal diversity jurisdiction, among other reasons. [Doc. 21]. *See Allen v. C & H Distributors, L.L.C.*, 813 F.3d 566, 571 (5th Cir. 2015) ("Ordinarily '[i]n an action where a state is a party, there can be no federal jurisdiction on the basis of diversity of citizenship because a state is not a citizen for purposes of diversity jurisdiction.'"). Defendants responded to the Motion for Remand,[2] urging that the Court maintain diversity jurisdiction because Plaintiffs had fraudulently joined the DEQ as a defendant. [Docs. 33, 34, 35].

In its Memorandum Ruling issued on November 18, 2020 (the "Nov. 18th Order"), the Court agreed with Defendants that the Plaintiffs had fraudulently joined the DEQ as a defendant. [Doc. 49]. In reaching its conclusion, the Court conducted a

---

[1]      The DEQ is an agency of the State of Louisiana and, thus, an "arm of the state" for purposes of the Court's analysis. *See generally Corn v. Mississippi Dep't of Pub. Safety*, 954 F.3d 268, 273 (5th Cir. 2020).

[2]      The DEQ never made an appearance in this litigation and, as such, did not join in Defendants' Response to the Motion for Remand.

fraudulent joinder analysis – therein employing a Federal Rule of Civil Procedure 12(b) inquiry into whether the "complaint…contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[3] *See Waste Mgmt., Inc.* v. *AIG Specialty Ins. Co.*, 974 F.3d 528, 533 (5th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

The Court ultimately concluded that Plaintiffs failed to state a claim for which relief could be granted against the DEQ, holding, in essence, that: (i) there is no cognizable cause of action under Louisiana law against the DEQ for contamination caused by private industry and (ii) Louisiana tort law does not create a "specific duty on the part of the DEQ to inform [landowners] of reported contamination within a particular timeframe or to otherwise oversee remediation in any particular manner." [*Id.*]. Instead, the Court found that Louisiana's statutory scheme allows for a party seeking to challenge DEQ action or inaction to pursue recourse through certain administrative procedures set forth in Louisiana Revised Statutes 30:2050.1. [*Id.*].[4]

---

[3]     "A non-diverse defendant is improperly joined if there was actual fraud in the pleading of jurisdictional facts or the plaintiff cannot establish a cause of action against the non-diverse defendant." *Waste Mgmt., Inc. v. AIG Specialty Ins. Co.*, 974 F.3d 528, 533 (5th Cir. 2020). This case involves the latter form of fraudulent joinder, as Defendants did not allege actual fraud in the pleadings.

[4]     The Court acknowledges that its holding resolved a matter of first impression in this District and that the underlying legal issues have yet to be squarely addressed by the Louisiana Supreme Court or the United States Fifth Circuit Court of Appeals. This holding, however, is in accord with the context of Louisiana's statutory scheme establishing the DEQ, the plain text of Louisiana Revised Statutes § 30:2271(A)(4) (stating, in relevant part, that "[t]he state cannot and should not bear the costs associated with a private profit making venture"), as well as similar holdings by courts in the Eastern District of Louisiana and the Middle District of Louisiana. *See, Butler v. Denka Performance Elastomer LLC*, CV 18-6685, 2019 WL 1160814, at *6 (E.D. La. Mar. 13, 2019), *appeal dismissed*, 806 Fed. App'x. 271 (5th Cir. 2020) ("To seek damages from the state for exposure to emissions from a private defendant's manufacturing facility ventures into absurdity."); *Landry v. Laney Directional Drilling Co.*, CIV.A. 09-615-JVPSCR, 2009 WL 3833831, at *4 (M.D. La. Nov. 16, 2009)

Because Plaintiffs failed to establish a cognizable basis of recovery against the DEQ, the Court dismissed the DEQ from the Lawsuit without prejudice.[5] [*Id.*]. *See Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016). Finding that complete diversity existed among the remaining properly joined parties, the Court denied the Motion for Remand. [*Id.*].

The Lawsuit is one of twelve related cases pending before the Court.[6] Currently, all parties in the twelve related cases are engaged in a pre-certification discovery period in accordance with this Court's Order [Doc. 90] to explore the potential for class certification. As of this filing, the DEQ remains a defendant in four of the pending related matters.

---

(stating that "[i]mposing a duty on DEQ to bear the cost of testing and remediating sites upon which material has been allegedly deposited from a private drilling company would clearly be contrary to the policy set forth by the statute" where the plaintiffs sued the DEQ for negligently testing hazardous material and failing to properly remediate it).

[5]    The Court originally dismissed the claims against the DEQ with prejudice. [Doc. 49]. However, upon reconsideration, the Court amended its Nov. 18th Order to dismiss the DEQ without prejudice. *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 210 (5th Cir. 2016) ("[T]he only ground for dismissing any improperly joined, nondiverse party is lack of subject matter jurisdiction …. Therefore, the dismissal of a nondiverse party over whom the court does not have jurisdiction must be a dismissal without prejudice in every instance.").

[6]    *See Alexander v. Dresser*, LLC, No. 1:21-cv-00161-DCJ-JPM (W.D. La. Dec. 30, 2020); *Barnes v. Dresser*, LLC, No. 1:21-cv-00024-DCJ-JPM (W.D. La. Jan. 6, 2021); *Barrett v. Dresser, LLC*, No. 1:20-cv-01346-DCJ-JPM (W.D. La. Oct. 16, 2021); *Cook v. Dresser, LLC*, No. 1:21-cv-00696-DDD-JPM (W.D. La. March 1, 2021); *D&J Investments of Cenla, LLC v. Baker Hughes, a GE Co., LLC*, No. 1:20-cv-01174-DCJ-JPM (W.D. La. July 31, 2020); *Epperson v. Dresser, LLC*, No. 1:21-cv-00155-DCJ-JPM (W.D. La. Dec. 30, 2020); *Hyatt v. Baker Hughes Holdings LLC*, No. 1:20-cv-01460-DCJ-JPM (W.D. La. Sept. 25, 2020); *Jacques v. Baker Hughes, a GE Co., LLC*, No. 1:21-cv-00315-DCJ-JPM (W.D. La. Jan. 7, 2021); *LeBlanc v. Baker Hughes, a GE Co., LLC*, No. 1:21-cv-00142-DCJ-JPM (Dec. 30, 2020); *Perry v. Baker Hughes, a GE Co., LLC*, No. 1:20-cv-01293-DCJ-JPM (W.D. La. Aug. 21, 2020); *Stalnaker v. Baker Hughes, a GE Co., LLC*, No. 1:20-cv-01292-DCJ-JPM (W.D. La. Aug. 4, 2020); *Wahlder v. Baker Hughes, Inc.*, No. 1:20-cv-00631-DCJ-JPM (May 8, 2020).

## II.    <u>The State Court Declaratory Judgment Action</u>

On March 22, 2021, Michael Guillory ("Guillory") – a plaintiff in the Lawsuit – filed a Petition for Declaratory Judgment (the "Declaratory Judgment Action") against the DEQ in the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana ("19th JDC"),[7] to collaterally challenge the legal conclusions underlying this Court's dismissal of the DEQ in its Nov. 18th Order.[8] [Doc. 106-2]. In the Declaratory Judgment Action, Guillory requests that the state court grant a declaratory judgment against the DEQ stating that: (i) the DEQ "owes a duty to provide timely notice to [Guillory] and similarly situated members of the public likely to be adversely affected by contamination that poses a significant risk of adverse health effects" and (ii) Guillory "has a cause of action against [DEQ] arising from its failure to comply with the provisions of La. Admin Code. tit. 33, Pt I, §§ 101-109." [Doc. 125-1, Plaintiff's Exhibit 1]. The cited sections of the Louisiana Administrative Code, essentially, delineate the procedures established by the DEQ for notifying the public of contamination. *See* La. Admin. Code. tit. 33, Pt I, §§ 101-109.

On May 26, 2021, the DEQ filed peremptory exceptions of no cause of action and lack of subject matter jurisdiction and, alternatively, a motion to stay pending

---

[7]    The Declaratory Judgment Action is docket number C-705981 in the 19th JDC.

[8]    The Petition for Declaratory Judgment was amended on April 21, 2021, to: (i) add Patrick Keith ("Keith") as a plaintiff; (ii) name the Louisiana Department of Natural Resources ("DNR") as a defendant; and (iii) request the court to grant a declaratory judgment declaring that the DNR owes a duty to timely notify Keith and similarly situated members of the public of contamination posing a significant risk of adverse health effects. [Doc. 125-1, Plaintiff's Exhibit 1]. As Keith's claims against the DNR are stated separately from Guillory's claims against the DEQ, the Court's injunction stated herein is applicable only to Guillory's claims against the DEQ.

the outcome of the Lawsuit. [Doc. 127-1 p. 109].[9] A hearing in the 19th JDC on the two exceptions and motion to stay is currently set for August 16, 2021. [*Id.* p. 111].

### III.   The Instant Consolidated Motion for Injunction Against State Court Proceedings and Motion to Enter Partial Final Judgment Under Rule 54(b)

In response to the Declaratory Judgment Action brought in the 19th JDC, Halliburton filed the subject CONSOLIDATED MOTION FOR INJUNCTION AGAINST STATE COURT PROCEEDINGS AND MOTION TO ENTER PARTIAL FINAL JUDGMENT UNDER RULE 54(B) on May 21, 2021, requesting the Court to: (i) enjoin the Declaratory Judgment Action and (ii) certify the Court's dismissal of the DEQ in the Nov. 18th Order as a final judgment. [Doc. 106]. Plaintiffs opposed the Motions on June 9, 2021 [Doc. 118], to which Halliburton replied on June 14, 2021 [Doc. 120]. Following the hearing on the Motions, the Court ordered the parties to submit supplemental briefing on the status and potential implications of the Declaratory Judgment Action [Docs. 126, 128] and took the Motions under advisement.

The Motions allege that Guillory's Declaratory Judgment Action is an attempt to re-litigate issues already decided by the Court in its Nov. 18th Order; specifically, the Court's holding that Louisiana tort law does not provide a cause of action against the DEQ for contamination caused by private industry, nor does it create a specific duty on the part of the DEQ to inform landowners of reported contamination within a particular timeframe or to otherwise oversee remediation in a particular manner.

---

[9]      A peremptory exception of no cause of action under the Louisiana Code of Civil Procedure is the functional equivalent of a Rule 12(b)(6) motion to dismiss under the Federal Rules of Civil Procedure. *Resolution Tr. Corp. v. U.S. Fid. & Guar. Co.*, 27 F.3d 122, 125 (5th Cir. 1994).

[Doc. 106-1].[10] Accordingly, the movants suggest that Guillory's state court filing is an inappropriate collateral attack on the Court's ruling and that the Court should therefore enjoin the Declaratory Judgment Action based on the doctrine of collateral estoppel. Halliburton further requests the Court to grant a partial final judgment under Rule 54(b) to create an avenue for Plaintiffs to immediately appeal the dismissal of the DEQ in the Nov. 18th Order. [*Id.*]. Because under these facts Defendants' request for an injunction is dependent, in part, on the existence of a final judgment, the Court will first address the Rule 54(b) motion.

**DISCUSSION**

## I.     **Motion to Enter Partial Final Judgment Under Rule 54(b)**

### a.     *Legal Standard*

28 U.S.C. § 1291 provides that courts of appeals may review only "final decisions" of the district courts. Typically, "in a suit against multiple defendants, there is no final decision as to one defendant until there is a final decision as to all defendants." *Williams v. Seidenbach*, 958 F.3d 341, 343 (5th Cir. 2020). Nevertheless, Federal Rule of Civil Procedure 54(b) allows a district court to certify an otherwise non-final judgment as a final, appealable judgment for purposes of § 1291, stating:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to

---

[10]     The Court notes that while the Louisiana Administrative Code does set forth timeframes for public notification, the application of these timeframes to specific instances of contamination is left solely to the discretion of the DEQ. Specifically, the relevant administrative provision provides that public notification of contamination is to be issued when "reasonably determined by [the DEQ] to be appropriate in accordance with the considerations identified in this Chapter…to persons whom the [DEQ] reasonably determines are likely to be adversely affected by the release [of hazardous substances or pollutants]." La. Admin. Code. tit. 33, Pt I, § 109.

> one or more, but fewer than all, claims or parties only if the court
> expressly determines that there is no just reason for delay. Otherwise,
> any order or other decision, however designated, that adjudicates fewer
> than all the claims or the rights and liabilities of fewer than all the
> parties does not end the action as to any of the claims or parties and may
> be revised at any time before the entry of a judgment adjudicating all
> the claims and all the parties' rights and liabilities.

Thus, "Rule 54(b) authorizes the district court to make immediately appealable a judgment that disposes, with finality, of one or more (but not all) claims, even though other claims remain pending in the district court so that the suit as a whole has not been finally disposed of by that court." *Williams*, 958 F.3d at 348.

Rule 54(b) "reflects a balancing of two policies: avoiding the 'danger of hardship or injustice through delay which would be alleviated by immediate appeal' and 'avoid[ing] piecemeal appeals.' " *Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 740 (5th Cir. 2000). Certification under Rule 54(b) is reserved for the sound discretion of the district judge and is reviewed under an abuse of discretion standard. *F.D.I.C. v. McFarland*, 05-30377, 2008 WL 162882, at *2 (5th Cir. Jan. 16, 2008).

    *b.*    *Law and Analysis*

Both Plaintiffs and Halliburton agree that the Court's dismissal of the DEQ from the Lawsuit does not constitute a "final decision" under § 1291. Accordingly, the Nov. 18th Order must be certified, in part, as a final judgment as a prerequisite to the Fifth Circuit having jurisdiction to review the DEQ's dismissal. *See Williams*, 958 F.3d at 343 ("[I]n a suit against multiple defendants, there is no final decision as to one defendant until there is a final decision as to all defendants" absent a Rule 54(b) order to the contrary.). Plaintiffs oppose a Rule 54(b) certification, maintaining that even if they were to appeal the Nov. 18th Order, the Fifth Circuit would still hold the

discretion as to whether to certify the legal issues underlying the DEQ's dismissal to the Louisiana Supreme Court. [Doc. 128]. Halliburton counters that a partial Rule 54(b) certification would safeguard the rights of all parties to this litigation and avert a waste of judicial resources. [Docs. 106-1, 126].

Because the Lawsuit involves multiple parties and claims for relief, the DEQ's dismissal may be certified as a final decision under Rule 54(b), provided the Court expressly determines that there is no just reason for delay. Here, the Court concludes that there is no just reason for delaying entry of a partial final judgment of the Nov. 18th Order, thereby permitting Plaintiffs to appeal the Court's holding that the DEQ was fraudulently joined.

Absent certification, this case will proceed to trial without the DEQ's presence as a defendant. A certification of the DEQ's dismissal as a final judgment avoids the hardship and injustice of a later remand or retrial if, upon appeal, the DEQ is ultimately found to have been properly joined as a defendant. *See Larroquette v. Cardinal Health 200, Inc.*, CIV.A. 04-0117, 2004 WL 3132961, at *1 (E.D. La. Dec. 10, 2004), *aff'd*, 466 F.3d 373 (5th Cir. 2006) (finding no just reason for delaying entry of a final judgment against the defendant to allow plaintiff to appeal the court's decision that the defendant was fraudulently joined "to avoid the hardship and injustice of a potentially needless retrial if the defendant is found not to have been fraudulently joined"). Additionally, a Rule 54(b) certification of the DEQ's dismissal would not offend the well-settled federal policy against piecemeal appeals because the Nov. 18th Order completely disposed of Plaintiffs' claims against the DEQ. *See*

*Tetra Techs., Inc. v. Cont'l Ins. Co.*, 755 F.3d 222, 230 (5th Cir. 2014) (a court disposes of a "claim" for Rule 54(b) purposes when it makes an express holding as to liability).

The Court finds it notable that Plaintiffs chose not to move the Court for a Rule 54(b) certification of the DEQ's dismissal and now oppose Defendants' motion for certification. Federal procedural law provides that a party aggrieved by an unfavorable judgment in this district may seek review in the United States Fifth Circuit Court of Appeals. The Fifth Circuit may then, in its discretion, choose to certify any relevant state law issues to the Louisiana Supreme Court. Despite Plaintiffs' opposition, given the nature of the Court's holding in its Nov. 18th Order and its critical impact on the jurisdiction of this Lawsuit and the numerous related matters, the Court deems it appropriate to provide Plaintiffs a legitimate avenue to pursue appellate review of the DEQ's dismissal without undue interruption of the progression of this matter. Accordingly, the Court herein enters a final judgment pursuant to Rule 54(b) as to its dismissal of the DEQ in the Nov. 18th Order.

## II.    Motion for Injunction Against State Court Proceedings

Next, Defendants urge that the doctrine of collateral estoppel warrants an injunction of Guillory's Declaratory Judgment Action in the 19th JDC. In general terms, Defendants contend that, because Guillory requests that the 19th JDC render judgment on issues of law that this Court decided in its Nov. 18th Order, Plaintiff Guillory should be precluded from proceeding in the Declaratory Judgment Action. For the following reasons, the Court grants the requested injunction based on the doctrine of collateral estoppel and, as an independent ground, because there is clear

evidence that Plaintiffs' counsel filed the Declaratory Judgment Action for the express purpose of subverting this Court's jurisdiction.

### a.    Legal Standard

The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. This broad grant of authority is tempered by the Anti-Injunction Act, which generally prohibits federal court from enjoining state proceedings unless the injunction falls into one of three exceptions: (i) it is expressly authorized by an Act of Congress; (ii) it is necessary in aid of jurisdiction; (3) it is necessary to protect or effectuate judgments. 28 U.S.C. § 2283.

The purpose of the Anti-Injunction Act is to "forestall[] the inevitable friction between the state and federal courts that ensues from the injunction of state judicial proceedings by a federal court." *J.R. Clearwater Inc. v. Ashland Chem. Co.*, 93 F.3d 176, 178 (5th Cir. 1996) (quoting *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988)). Consequently, federal courts must be cautious about infringing on the legitimate exercise of state judicial power. *State of Tex. v. United States*, 837 F.2d 184, 186 (5th Cir. 1988). Any doubts concerning the "propriety of a federal injunction ... should be resolved in favor of permitting the state courts to proceed..." *Aptim Corp. v. McCall*, 888 F.3d 129, 143 (5th Cir. 2018).

### b.    Collateral Estoppel

Halliburton posits that the Court has authority to enjoin the Declaratory Judgment Action pursuant to the doctrine of collateral estoppel, which falls under the third exception to the Anti-Injunction Act, commonly referred to as the

"relitigation exception." The relitigation exception "was designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court." *Id.* In this regard, the relitigation exception is "founded in the well-recognized concepts of *res judicata* and collateral estoppel." *Id.* (quoting *Chick Kam Choo*, 486 U.S. at 147).[11]

Collateral estoppel, or "issue preclusion," precludes "a party from litigating an issue it previously 'litigated and lost' in another action." *Hacienda Records, L.P. v. Ramos*, 718 Fed. App'x. 223, 228 (5th Cir. 2018) (citing *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)); *Duffy & McGovern Accommodation Servs. v. QCI Marine Offshore, Inc.*, 448 F.3d 825, 829 (5th Cir. 2006). "Moreover, the doctrine of collateral estoppel applies when a 'previously litigated issue of law or fact' is: (i) 'identical to the present issue,' (ii) 'actually litigated,' (3) 'necessary to a final judgment,' and (4) 'reviewed under the same standard as the present issue.' " *City of Alexandria v. Davidson*, CIV.A. 14-0723, 2014 WL 2891438, at *4 (W.D. La. June 25, 2014) (quoting *Duffy*, 448 F.3d at 830).

Plaintiffs counter that an injunction of the Declaratory Judgment Action based on collateral estoppel is not appropriate, contending that: (i) the elements of collateral estoppel are not met under these facts and (ii) collateral estoppel does not apply to pure questions of law.  The Court addresses both arguments in turn.

---

[11]     Here, the doctrine of *res judicata* does not apply because the Court's Nov. 18th Order was jurisdictional and, accordingly, did not render a final judgment on the merits of the DEQ's dismissal. *See Vines v. Univ. of Louisiana at Monroe*, 398 F.3d 700, 705 (5th Cir. 2005) (among other prerequisites, "the prior action must have concluded with a final judgment on the merits" in order for the relitigation exception under *res judicata* to apply).

i.   <u>Elements of Collateral Estoppel</u>

Plaintiffs' principal argument against the application of collateral estoppel to these facts focuses on the third element, or whether the issue of law is "necessary to a final judgment." *See id.* Because the DEQ's dismissal is not, to date, appealable as of right, Plaintiffs argue that the two subject issues of law decided by the Court in the Nov. 18th Order were not necessary to a *final* judgment. *See Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*, 434 F.3d 320, 323–24 (5th Cir. 2005) ("[A]n order that 'is not a final judgment, and therefore is not appealable as a matter of right … lacks sufficient finality to be entitled to preclusive effect' under the relitigation exception.") (quoting *J.R. Clearwater Inc. v. Ashland Chem. Co.*, 93 F.3d 176, 179 (5th Cir. 1996)). Thus, Plaintiffs maintain that the third element fails because the two relevant issues decided in the Nov. 18th Order were *interlocutory* in nature.

Because, as discussed above, the Count contemporaneously herewith certifies the Nov. 18th Order under Rule 54(b) as to its dismissal of the DEQ, the third element of collateral estoppel is met. *See Williams v. Seidenbach*, 958 F.3d 341, 348 (5th Cir. 2020) ("Rule 54(b) authorizes the district court to make immediately appealable a judgment that disposes, with finality, of one or more (but not all) claims, even though other claims remain pending in the district court so that the suit as a whole has not been finally disposed of by that court.").

The Court finds that the remainder of the collateral estoppel elements are likewise satisfied. As to the first element, the Court held in the Nov. 18th Order that there is no cognizable cause of action under Louisiana law against the DEQ for contamination caused by private industry, nor does Louisiana tort law create a duty

on the part of the DEQ to notify landowners within a particular timeframe or oversee remediation in a particular manner. [Doc. 49]. In the Declaratory Judgment Action, Guillory requests the 19th JDC to make the following two declarations: (i) the DEQ "owes a duty to provide timely notice to [Guillory] and similarly situated members of the public likely to be adversely affected by contamination that poses a significant risk of adverse health effects" and (ii) Guillory "has a cause of action against [DEQ] arising from its failure to comply with the provisions of La. Admin Code. Tit. 33, Pt I, §§ 101-109." [Doc. 125-1, Plaintiff's Exhibit 1]. Because the two issues of law raised by Guillory in the Declaratory Judgment Action are the same as those decided in the Nov. 18th Order, the first element is met.

With respect to the second element, "[t]he requirement that an issue be 'actually litigated' for collateral estoppel purposes simply requires that the issue is raised, contested by the parties, submitted for determination by the court, and determined." *In re Keaty*, 397 F.3d 264, 272 (5th Cir. 2005). Because the two subject issues of law were raised, contested, briefed by the parties, and adjudicated by the Court in the Nov. 18th Order, the second element is likewise satisfied.

Finally, the fourth element is present here because the two issues of law in the Declaratory Judgment Action are subject to the same legal standard that the Court applied in the Nov. 18th Order. "A peremptory exception of no cause of action under the Louisiana Code of Civil Procedure is the equivalent of a Rule 12(b)(6) motion to dismiss under the Federal Rules of Civil Procedure." *Resolution Tr. Corp. v. U.S. Fid. & Guar. Co.*, 27 F.3d 122, 125 (5th Cir. 1994). Therefore, in adjudicating the DEQ's peremptory exception of no cause of action, the 19th JDC would look to relevant

Louisiana law and jurisprudence to determine if the Petition for Declaratory Judgment contains sufficient factual allegations, accepted as true, to state a plausible cause of action – the exact exercise the Court undertook in employing its Rule 12(b)(6) analysis in the Nov. 18th Order. *See Lowther v. Town of Bastrop*, 2020-01231, p. 2 (La. 5/13/21) ("An exception of no cause of action tests the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged…All well-pleaded allegations of fact are accepted as true and correct…") (internal citations omitted).

Accordingly, the Court concludes that the relitigation exception to the Anti-Injunction Act is applicable under these circumstances. In order to protect and effectuate its judgment dismissing the DEQ from the Lawsuit, an injunction of Guillory's claims against the DEQ in the Declaratory Judgment Action is warranted.

ii.   Application of Collateral Estoppel to Pure Questions of Law

Plaintiffs also argue that collateral estoppel does not apply to pure questions of law such as those decided in the Nov. 18th Order and now raised in the Declaratory Judgment Action. Because the Court rendered judgment on the subject issues of law for jurisdictional purposes, rather than to the merits of Plaintiffs' claims, Plaintiffs contend that collateral estoppel cannot serve as a ground for the injunctive relief sought.[12]

---

[12]   In addition to this argument, Plaintiffs also maintain that the Eleventh Amendment bars the application of issue preclusion. [Docs. 118, 128]. However, Plaintiffs cite no direct authority for this proposition nor does the Court find any support for this assertion.

In support of this position, Plaintiffs rely on part of a footnote in *Gruver v. Louisiana Board of Supervisors for Louisiana State University Agricultural and Mechanical College*, which states that "a reason why issue preclusion does not typically apply to pure questions of law is that the more flexible doctrine of *stare decisis* provides enough stability and protection against unnecessary litigation burdens." 959 F.3d 178, 182 n. 3 (5th Cir. 2020). Plaintiffs' citation to this footnote, however, is misleading.

In *Gruver*, the defendant, Louisiana State University (LSU), sought to invoke Eleventh Amendment immunity against the plaintiffs' Title IX claim. *Id.* at 180. The plaintiffs argued that collateral estoppel precluded LSU from raising Eleventh Amendment immunity as defense because LSU unsuccessfully asserted it in an unrelated case two decades previously. *Id.*; s*ee also Pederson v. Louisiana State University*, 213 F.3d 858, 876 (5th Cir. 2000) (holding that LSU waived Eleventh Amendment immunity by accepting federal funds under Title IX).

The Fifth Circuit addressed the Plaintiffs' argument in the following footnote on which Plaintiffs in the Lawsuit rely:

> We thus need not address the [plaintiffs'] contention that preclusion bars LSU from relitigating the Eleventh Amendment issue it lost in *Pederson*. While Eleventh Amendment immunity is a jurisdictional matter, preclusion is not. Indeed, a reason why issue preclusion does not typically apply to pure questions of law is that the more flexible doctrine of *stare decisis* provides enough stability and protection against unnecessary litigation burdens.

*Gruver*, 959 F.3d at 182 n. 3 (internal citations omitted). Hence, in general, parties are free to re-litigate questions of law in subsequent, unrelated lawsuits. However, the principle of *stare decisis* alone does not protect against the hardship and injustice

17

of the same parties relitigating issues of law or fact that have been conclusively determined between them in a previous proceeding. *See Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 396 (5th Cir. 2004) ("Collateral estoppel prevents parties from re-litigating the same issues conclusively determined between them in a previous action.").

Unlike the circumstances in *Gruver*, the Lawsuit and the Declaratory Judgment Action involve the same parties, claims, and controlling legal principles. Because the two actions are not unrelated and all components of collateral estoppel are met, the Court finds that Guillory may be enjoined from re-litigating the issues of law raised in the Declaratory Judgment Action.

### c.   *Clear Evidence of Plaintiffs' Intent to Subvert Removal*

Though not briefed by the parties, the first exception to the Anti-Injunction Act, *i.e*, where the injunction is "expressly authorized by an Act of Congress," provides an independent basis for the Court to enjoin the Declaratory Judgment Action. Section 1446(d) of the general removal statute "has long been recognized as one of the statutory exceptions to [the Anti–Injunction Act]." *Fulford v. Transp. Servs. Co.*, 412 F.3d 609, 612 (5th Cir. 2005). Pursuant to Section 1446(d), once a case is removed to federal court, "the State court shall proceed no further unless and until the case is remanded." 28 U.S.C. § 1446(d).

Section 1446(d) authorizes a federal court to which a case is removed to stay all subsequent state court proceedings in the removed suit. Further, "[a]lthough the removal statute only commands the state court to stay the case that was actually removed, it has been interpreted to authorize courts to enjoin later filed state cases."

*Ayala v. Gabriel Bldg. Supply*, CV 12-577, 2012 WL 12990575, at *3 (E.D. La. Nov. 7, 2012) (quoting *Kansas Pub. Emps. Ret. Sys. v. Reimer & Kroger Assocs., Inc.*, 77 F.3d 1063, 1069 (8th Cir. 1996)). Under Fifth Circuit precedent, "where a district court finds that a second suit filed in state court is an attempt to subvert the purposes of the removal statute, it is justified and authorized by [Section 1446(d) in enjoining the proceedings in the state court." *Frith v. Blazon-Flexible Flyer, Inc.*, 512 F.2d 899 (5th Cir. 1975); s*ee also Fulford v. Transp. Servs. Co.*, 412 F.3d 609 (5th Cir. 2005); *Matthews v. Stolier*, CV 13-6638, 2016 WL 4180868 (E.D. La. Aug. 8, 2016).

Here, Plaintiffs' case was properly removed from state court to federal court on the basis of diversity jurisdiction. *See* 28 U.S.C. §§ 1441, 1446; [Doc. 1]. Plaintiffs then moved to remand the action, which this Court denied based on its determination that Plaintiffs had fraudulently joined the DEQ as a defendant. [Doc. 49]. In so finding, the Court analyzed relevant Louisiana law and jurisprudence to determine whether Plaintiffs maintained a reasonable basis for recovery against the DEQ, concluding:

> Plaintiffs fail to demonstrate how these statutory and state constitutional provisions give rise to a specific duty on the part of the DEQ to inform them of reported contamination within a particular timeframe or to otherwise oversee remediation in any particular manner … Ultimately, the Court concludes that Plaintiffs have not stated a cognizable claim against the DEQ.

[Doc. 49]. Yet, four months later, Guillory filed the Declaratory Judgment Action requesting that a different state court issue a declaratory judgment for the purpose of undermining the express ruling of this Court as to the plausibility of Plaintiffs' claims against the DEQ.

To their credit, Plaintiffs' counsel has been transparent with the Court regarding their purpose in bringing the Declaratory Judgment Action.[13] In this respect, the ultimate objective of this filing is clear: to force the Court to remand the Lawsuit to state court. In a status conference held on March 24, 2021 with Magistrate Judge Perez-Montes, counsel stated the following:

> We have filed a dec [sic] action in East Baton Rouge Parish against DEQ, asking the Court to declare that DEQ does in fact have a duty to protect the public under that regulation. So we anticipate DEQ answering and filing a summary judgment. We feel the statute and the regulation is very clear. *And then depending on the Court's ruling, if the Court declares, we will probably be amending DEQ back in and ask Your Honor to remand us.* So I just wanted to inform the Court that that is occurring.

[Doc. 126-1, March 24, 2021 Joint Status Conference Transcript, 33:23-34:6] (emphasis added). Thus, should the 19th JDC grant Guillory a favorable judgment, Plaintiffs' counsel intends to "amend[] [the] DEQ back in" to the Lawsuit and move for remand back to the 35th JDC. Moreover, the relief sought by Guillory is declaratory judgment rather than damages – further underlining that the Declaratory Judgment Action is targeted at defeating the Lawsuit's lawful removal to federal court.

---

[13]    Despite their candor, the Court finds it appropriate to formally caution counsel in this Lawsuit and related matters that any further attempt to improperly undermine the authority or jurisdiction of this Court may warrant remedial action. The filing of the Declaratory Judgment Action in the 19th JDC and the related motion practice in this proceeding has been an inexcusable waste of judicial and litigative resources and runs contrary to the interests of individual plaintiffs and other landowners near the Dresser facility – each of whom may have sustained injury resulting from contamination of their respective properties. Specifically, this exercise has stalled the progression of this case by diverting attention and resources away from the merits of the Lawsuit and the pre-certification discovery ordered by the Court.

Plaintiffs' counsel maintains that its intent in filing the Declaratory Judgment Action is immaterial. In Plaintiffs' Post-Hearing Brief concerning this Motion, counsel represents:

> Guillory's motivation in joining the LDEQ in this suit and in filing his subsequent state court action is irrelevant. This Court either has jurisdiction, or it does not....In briefing and in memoranda, Guillory has made no secret of his intent to establish a viable claim against the LDEQ in his state court proceeding. Obviously, the success of Guillory's state court declaratory judgment action will potentially impact this Court's jurisdiction.

[Doc. 128]. Thus, the record in this matter reveals that Plaintiffs' intent in bringing the Declaratory Judgment Action was an attempt to defeat this Court's removal jurisdiction.

Contrary to the contention of Plaintiffs' counsel in their Post-Hearing Brief, in this Circuit, a plaintiff's aim or intent in filing a subsequent state court action following removal of his prior action is, in fact, of significance to a federal court's decision to issue an injunction under the Anti-Injunction Act. *See, e.g., Fulford v. Transp. Servs. Co.*, 412 F.3d 609, 613 (5th Cir. 2005) (noting the Fifth Circuit's holding in a prior case that an injunction was not warranted when "the second suit was not brought in an *attempt* to subvert the purposes of the removal statute and was not *aimed* at defeating federal jurisdiction") (emphasis added) (quoting *Frith v. Blazon-Flexible Flyer, Inc.*, 512 F.2d 899, 900 (5th Cir. 1975)); *Matthews v. Stolier*, CV 13-6638, 2016 WL 4180868, at *4 (E.D. La. Aug. 8, 2016) ("[T]he Court finds that the State Action was filed with the *intent* of subverting the purpose of the removal statutes and should be enjoined.") (emphasis added); *Burton v. JPMorgan Chase Bank, N.A.*, 3:19-CV-845-KHJ-LRA, 2020 WL 7427724, at *2 (S.D. Miss. Dec. 18,

2020) (injunction of state court proceeding is warranted where there is "clear evidence that the [p]laintiff fraudulently filed the state court action to circumvent the federal court's removal jurisdiction."). As such, Section 1446(d) provides an additional basis for the Court to enjoin all of Guillory's claims against the DEQ in the Declaratory Judgment Action.

Ultimately, a Rule 54(b) certification of the DEQ's dismissal as well as an injunction of the Declaratory Judgment Action best serves the interests of all parties to this litigation. By virtue of the Rule 54(b) partial final judgment, Plaintiffs will have the opportunity to appeal the Court's dismissal of the DEQ in the Nov. 18th Order. Should the Fifth Circuit disagree with the Court's dismissal of the DEQ, the Lawsuit may necessarily be remanded to the 35th JDC. Nonetheless, a defendant's right to removal must likewise be protected, and the Court's granting of Halliburton's Motions will safeguard Defendants' right to proceed in federal court. *See Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 575 (5th Cir. 2004) ("[T]he Federal courts may and should take such action as will defeat attempts to wrongfully deprive parties entitled to sue in the Federal courts of the protection of their rights in those tribunals.") (quoting *Alabama Great S. Ry. Co. v. Thompson*, 200 U.S. 206, 218, 26 S.Ct. 161, 50 L.Ed. 441 (1906)). The Court encourages Plaintiffs to take advantage of the Rule 54(b) certification and appeal the Nov. 18th Order dismissing the DEQ from the Lawsuit.

For the foregoing reasons, the CONSOLIDATED MOTION FOR INJUNCTION AGAINST STATE COURT PROCEEDINGS AND MOTION TO ENTER PARTIAL FINAL JUDGMENT UNDER RULE 54(B) before the Court is GRANTED.

22

## Conclusion

Accordingly,

IT IS ORDERED that Halliburton's Motion to Enter Partial Final Judgment Under Rule 54(b) [Doc. 106] is GRANTED. The dismissal of the DEQ in the Nov. 18th Order [Doc. 49] is hereby certified as the Court's Final Judgment as to all Plaintiffs' claims against the Louisiana Department of Environmental Quality.

IT IS FURTHER ORDERED that Halliburton's Motion for Injunction Against State Court Proceedings [Doc. 106] is GRANTED. Plaintiff Michael Guillory is ENJOINED from prosecuting his lawsuit against the Louisiana Department of Environment Quality filed on March 22, 2021, in the 19th Judicial District Court for the Parish of East Baton Rouge styled, *Michael Guillory v. State of Louisiana, Through the Department of Environmental Quality*, No. C-705981, Section 25.

THUS, DONE AND SIGNED in Chambers on this 11th day of August 2021.

DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE